UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| REBECCA B., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )   *No. 2:20-cv-00154-JDL* |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on several grounds, including that the ALJ rejected post-hearing evidence regarding the plaintiff's need for a bariatric chair on an erroneous basis.[2] *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 13-14. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] "A bariatric chair is a special oversize chair required for individuals who, because of their size, cannot use standard chairs." *Kelly v. Saul*, Case No. 18-cv-662-PB, 2019 WL 3492449, at *1 n.1 (D.N.H. Aug. 1, 2019).

1

through September 30, 2023, Finding 1, Record at 15; that she had the severe impairments of obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder (PTSD), Finding 3, *id*. at 16; that she had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that in an eight-hour workday she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, could never work at unprotected heights, with dangerous moving machinery, or on wet or uneven work surfaces, was able to perform simple tasks for two-hour blocks of time over the course of a normal work schedule, could never work with the public, could adapt to simple routine changes in a work environment, could interact with supervisors up to occasionally, and could work in sight of coworkers but could not perform work requiring teamwork or collaborative work, Finding 5, *id*. at 18; that, considering her age (33 years old, defined as a younger individual, on her alleged disability onset date, May 1, 2018), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 25; and that she, therefore, had not been disabled from May 1, 2018, her alleged onset date of disability, through the date of the decision, September 30, 2019, Finding 11, *id*. at 27. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion

drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

Pertinent to the issue in this case, the ALJ found that the plaintiff – who weighed 311 pounds and had a body mass index of 53.38 – suffered from the severe impairment of obesity. *See* Finding 3, Record at 16; *id.* at 24. The plaintiff's counsel raised the issue of workplace furniture at the hearing, asking the testifying vocational expert (VE) whether she knew that "a standard office chair is designed with a weight capacity of 275 pounds" and whether she was familiar with bariatric furniture. *Id.* at 64. After the VE responded affirmatively, the plaintiff's counsel asked, "Would a typical employer consider providing something other than . . . standard furniture to be an accommodation?" *Id.* The VE answered that it would depend on the employer because some employers "have bariatric chairs available." *Id.* Neither the plaintiff's counsel nor the ALJ asked any follow-up questions on the subject. *See id.* at 64-65.

After the hearing, the plaintiff submitted an affidavit from David Meuse, a certified rehabilitation counselor, opining that, contrary to the VE's testimony, a bariatric chair is an accommodation regardless of whether the employer has them available. *See id.* at 336-37. He reiterated that a standard workplace chair has a capacity of only 275 pounds, explaining:

3

> In my professional experience, bariatric furniture is substantially more expensive than standard furniture, often more than twice the cost. For this reason, bariatric furniture including chairs are not made generally available to all employees, but only to those who require them. An accommodation is a modification or adjustment in work process or equipment that enables an individual with a disability to perform the essential functions of the job. An individual weighing in excess of the design capacity of his or her chair cannot consistently perform sedentary job duties safely because the chair may break. Thus, in order to perform the essential functions of sedentary work, such an individual requires the accommodation of seating not provided to all workers performing similar duties. This reasoning agrees with my own experience placing obese workers in sedentary positions.

*Id.* at 337 (footnote omitted).

In her decision, the ALJ indicated that she was "unpersuaded by . . . Meuse's statements and by counsel's attempt to refute the validity of evidence provided by the testifying [VE]." *Id.* at 26. She noted that there was "no evidence whatsoever that a bariatric chair is medically necessary or that one has ever been prescribed by any treating or examining source[,]" and that she was "satisfied with [the testifying VE's] qualifications and experience[.]" *Id.*

The plaintiff argues that "the ALJ erred by dismissing the Meuse affidavit even though it clearly addressed vocational factors relevant to the availability of jobs for an individual with [the plaintiff's] specific characteristics." Statement of Errors at 14. She contends that the ALJ rejected Meuse's opinion for the wrong reasons because a claimant's "need for a bariatric chair is not a medical determination" but rather "a vocational factor based on the claimant's morbid obesity and the design limits of typical office chairs." *Id.* at 13.

The commissioner accuses the plaintiff of advocating for "a rule that anyone weighing over 275 pounds is *per se* disabled[,]" which, he argues, would defy common sense and create "an obvious perverse incentive if accepted." Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 16) at 15. Moreover, he contends that (i) the Meuse affidavit is irrelevant because it pertains to only to sedentary work, and there was no indication that the

4

representative light jobs identified by the VE require sitting, (ii) even assuming that the jobs require sitting, Meuse never said that employers were unwilling to provide bariatric chairs to employees who weigh over 275 pounds, and, (iii) even assuming that the need for a bariatric chair would result in some erosion of the number of available jobs, the court should assume that there still would be sufficient numbers of jobs available based on the large number of housekeeper positions identified by the VE.³  *See id.* at 15-18.

The plaintiff has the better argument.

Contrary to the commissioner's concerns, a claimant who needs a bariatric chair to perform seated work is not *per se* disabled. Although a VE "should not base his [or her] determination of the availability of jobs on the assumption that the" Americans with Disabilities Act (ADA) requires employers to provide a particular workplace modification, *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999), an ALJ may properly rely on VE testimony regarding how a needed modification impacts the number of jobs available to a claimant, *see, e.g.*, *Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 796 (8th Cir. 2018). As the *Higgins* court explained:

> It makes no difference that a particular workplace modification, such as a bariatric chair, might be called an "accommodation" or even a "reasonable accommodation." The use of the phrase is immaterial. It also makes no difference that a particular modification or accommodation is offered because the ADA requires employers to do so. What matters is the functional workplace as it actually exists. If a particular modification or "accommodation" has become prevalent and is commonly offered – whether considered required by the ADA or not – an ALJ may, of course, consider this evidence in making [his or her] determination.

---

³ I am not persuaded by the commissioner's attempt to liken this case to *Maietta v. Berryhill*, No. 2:17-cv-00054-NT, 2017 WL 4387365 (D. Me. Oct. 2, 2017) (rec. dec., *aff'd* Oct. 19, 2017). Opposition at 17. In that case, this court concluded that a claimant had failed to supply the necessary "factual predicate" demonstrating his need for a bariatric chair when he testified only that he needed a chair without arms or sides. *Maietta*, 2017 WL 4387365, at *3. Unlike in *Maietta*, the plaintiff's weight, combined with the testimony of the VE at hearing and Meuse's statements in his affidavit, supply the factual predicate for the need for a bariatric chair. *See Kelly*, 2019 WL 3492449, at *4 (distinguishing *Maietta* on basis of claimant's weight and Meuse's sworn statements concerning need for special chair).

5

*Id.* (citation omitted)*; see also id.* at 796-97 (affirming the denial of benefits when the VE opined that bariatric chairs were "commonly provided" and identified jobs that the claimant, who needed a bariatric chair, could perform); *cf. Jones*, 174 F.3d at 693-94 (affirming the denial of benefits when the VE "opined that specific jobs existed that [the claimant] could perform and that would accommodate [his] need to alternate between sitting and standing").

Consistent with these principles, the plaintiff's alleged need for a nonstandard bariatric chair – regardless of whether such a need might be called an accommodation – was relevant to her vocational prospects. The plaintiff weighed 311 pounds. *See* Record at 24. Meuse opined that a "typical office chair" is "designed and built with a capacity of 275" pounds and that an individual weighing more than that would require a bariatric chair to perform seated work safely. *Id.* at 336-37. At the hearing, the VE agreed that the maximum capacity of a "standard office chair" is 275 pounds. *See id.* at 64. However, she did not explain how the fact that the plaintiff exceeded the maximum capacity of a standard workplace chair would impact the number of jobs available to her, and the ALJ did not inquire whether and to what extent it would. *See id.* at 64-65. While Meuse also offered no such explanation, *see id*. at 336-37, the commissioner bore the burden at Step 5 of proving the claimant capable of performing work existing in significant numbers in the national economy, *see, e.g*., *Goodermote*, 690 F.2d at 7.

Rather than seeking further explanation, the ALJ dismissed Meuse's opinion on the basis that no medical provider had ever prescribed the plaintiff a bariatric chair. *See* Record at 26. This was not, as the plaintiff argues, a valid basis to dismiss Meuse's opinion. *See* Statement of Errors at 13. Indeed, this court recently rejected an argument by the commissioner that only medical experts may opine on a claimant's need for a bariatric chair, determining that VEs may be qualified to opine on the issue based on their practical "knowledge of the sort of chairs typically found in a

6

workplace." *Joshua B. ex rel. Travis D. B. v. Saul*, No. 2:19-cv-00436-LEW, 2020 WL 6376639, at *4-5 & n.6 (D. Me. Oct. 30, 2020) (rec. dec., *aff'd* Dec. 16, 2020) (noting that it does not take a medical degree "to determine the recommended weight specifications for, or the listed weight capacity of, chairs"). Accordingly, the ALJ could have relied on Meuse's opinion that a person of the plaintiff's weight would require a bariatric chair to perform seated work despite the absence of any medical evidence on the issue. *See id.* at *5.

At bottom, although evidence of the plaintiff's alleged need for a bariatric chair was presented at the hearing level, the ALJ did not seek clarification as to how that need would affect the job base available to the plaintiff, and went on to conclude that the plaintiff did not require a bariatric chair on an erroneous basis. These errors leave the ALJ's Step 5 determination unsupported by substantial evidence, requiring remand. *Cf. Kelly*, 2019 WL 3492449, at *3 ("Because . . . the VE who testified at the hearing could not say whether the jobs at issue required a bariatric chair for someone of [the claimant's] weight, the ALJ was in no position to determine that those jobs were available to a person such as [the claimant] who required a bariatric chair.")[4]; *Noora D. v. Berryhill*, No. 2:18-cv-00144-NT, 2019 WL 2173433, at *5 (D. Me. May 19, 2019) (rec. dec., *aff'd* June 4, 2019) (remanding when the VE testified that a claimant would require an accommodation, but "gave no testimony concerning the extent, if any, to which the need for that accommodation would have eroded the number of" jobs); *Jenkins v. Colvin*, Civil No. 1:14-cv-285-DBH, 2015 WL 5093290, at *3 (D. Me. Aug. 28, 2015) (remanding when "the ALJ erred in failing to obtain clarification from the [VE] about the availability of jobs" following "the

---

[4] The commissioner points out that *Kelly* is distinguishable from this case because the ALJ there refused to consider an affidavit from Meuse about bariatric chairs. *See* Opposition at 18-19. I recognize this distinction but nevertheless cite *Kelly* to illuminate how a claimant's asserted need for a bariatric chair impacts an ALJ's Step 5 determination.

[VE's] testimony on cross-examination that no jobs would be available to someone with [the claimant's] characteristics").

The commissioner, nonetheless, contends that remand would be an empty exercise for several reasons, *see* Opposition at 15-18, which I am not persuaded obviate the errors described above.

First, the commissioner contends that Meuse's opinion was irrelevant to the ALJ's Step 5 finding because it pertained to sedentary work rather than the light work that the ALJ found the plaintiff capable of performing. *See id.* at 15-16. Although it is true that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," it is expected that a claimant may sit "intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (also noting that some light work jobs involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work"). Thus, Meuse's opinion that the plaintiff would require a special chair to perform any seated work was relevant to the plaintiff's ability to perform any seated portions of the light work jobs identified by the VE.

Second, the commissioner points out that the *Dictionary of Occupational Titles* (*DOT*) descriptions of the three jobs identified by the VE on which the ALJ relied at Step 5 do not indicate that any involve sitting. *See* Opposition at 16; Record at 26; *DOT* §§ 209.587-034 (marker), 323.687-014 (cleaner/housekeeper), 361.687-014 (classifier) (U.S. Dep't of Labor 4th ed., rev. 1991). As discussed above, however, light work jobs, by definition, only require standing or walking for a total of six hours in a day, meaning, necessarily, that they require sitting of some sort during the remaining time. Accordingly, the DOT descriptions do not render Meuse's affidavit irrelevant. *See Stephen R. W. v. Saul*, No. 2:20-cv-00001-LEW, 2020 WL 7418972, at

\*3 & n.2 (D. Me. Dec. 18, 2020) (rec. dec., *aff'd* Jan. 19, 2021) (noting that the DOT descriptions of certain jobs did not "definitively resolve" the issue of how long a claimant would be required to sit during a workday).

Third, the commissioner argues that because Meuse did not indicate that employers would refuse to provide bariatric chairs to employees who required them, his opinion does not undermine the ALJ's Step 5 finding even if the jobs identified by the VE require sitting. *See* Opposition at 17. Yet, the ALJ did not so find, *see* Record at 26, rendering this argument an improper after-the-fact rationalization. *See, e.g., Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at \*3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) ("[A] reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale *actually articulated* by the agency decision-maker." (emphasis added)).  While "an exception to [that] rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion[,]" *id*. at \*4 (citation and internal quotation marks omitted), that is not the case here. In rejecting Meuse's opinion, the ALJ acknowledged that it was not consistent with the VE's testimony that she accepted. *See* Record at 26 (describing the proffer of the Meuse affidavit as an "attempt to refute the validity of evidence provided by the testifying [VE]").  Thus, it is not clear that the ALJ would have reached the same conclusion had she not rejected Meuse's opinion on an erroneous basis.

Finally, the commissioner contends that this court should assume, based on the 100,000 housekeeper positions identified by the VE, that even if the plaintiff's need for a bariatric chair eroded some of the job base, a sufficient number of jobs remained to satisfy the commissioner's burden at Step 5. *See* Opposition at 18.  In support of that proposition, the commissioner cites

*Webster v. Colvin*, No. 1:14-cv-00213-JCN, 2015 WL 1186375, at *1, 4 (D. Me. Mar. 16, 2015), in which this court affirmed the denial of benefits when an ALJ inferred that the 2.8 million jobs identified by the VE existed in significant numbers despite the claimant's need to alternate between sitting and standing while remaining on task. Contrary to the commissioner's argument, *Webster* is distinguishable from the present case. Not only were there far more jobs identified by the VE in that case, but the VE also "testified that based on her experience and observations in the field, she *would not reduce* the number of available jobs because the occupations w[ould] accommodate the sit/stand requirement[.]" *Id.* at *4. In the absence of such testimony in this case, "it is not the job of th[is] court to make assumptions to fill" an evidentiary gap concerning how an accommodation might erode the number of available jobs. *Noora D.*, 2019 WL 2173433, at *5.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 21st day of April, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge
